UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

BRYAN RARICK,                                       :
individually and on behalf of a class of            :
similarly situated persons,                         :        No. 2:13-cv-03286
                                                    :
                          Plaintiff,                :
             v.                                     :
                                                    :
FEDERATED SERVICE INSURANCE                         :
COMPANY,                                            :
                                                    :
                          Defendant.                :
_____

## MEMORANDUM

**Joseph F. Leeson, Jr.**                                  **September 28, 2015**
**United States District Judge**

   This case comes before the Court following the Honorable Edward G. Smith's Order to

Show Cause "why the Court should continue to exercise its discretionary DJA [Declaratory

Judgment Act] jurisdiction over this matter and not remand the case to the Court of Common

Pleas of Philadelphia County." ECF No. 34. For the reasons stated below, the Court will decline

to exercise jurisdiction over this matter and will remand the case.

## I.  Background

   On May 28, 2013, Plaintiff Bryan Rarick filed a Class Action Complaint in the Court of

Common Pleas of Philadelphia County asserting claims for declaratory relief, breach of contract,

appointment of Special Master, and violation of the Pennsylvania Bad Faith Statute, 42 Pa. C.S.

§ 8371. See Notice of Removal, Ex. A, ECF No. 1. Defendant Federated Service Insurance

Company removed the action to federal court on June 12, 2013, pursuant to the jurisdiction

afforded by 28 U.S.C. § 1332 and the procedural requirements of 28 U.S.C. § 1441. See Notice
of Removal.

The Complaint alleges that Plaintiff sustained personal injuries in a June 27, 2011, car
accident that occurred while he was driving a car insured under a Business Auto Policy ("the
Policy") issued by Defendant Federated Service Insurance Company to Keystone Automotive
Operations, Inc., Plaintiff's employer and the owner of the vehicle. Compl. ¶¶ 4-8. The Business
Auto Policy provided $2,000,000 in liability coverage and $1,000,000 in uninsured motorist
benefits. Compl. ¶¶ 9-10.

The vehicle driven by Plaintiff was forced off the roadway by the driver of an
unidentified vehicle, causing Plaintiff's vehicle to roll over. Compl. ¶ 5. The owner and operator
of the unidentified vehicle are both unknown. Compl. ¶ 6. Plaintiff reported the car accident and
made a claim upon Defendant for recovery of uninsured motorist benefits, as an unidentified
vehicle is considered an uninsured motor vehicle under the Pennsylvania Motor Vehicle
Financial Responsibility ("MVFR") Law and the Policy. Compl. ¶ 20. Defendant denied
coverage on the basis that the Policy provided no uninsured motorist coverage for persons other
than the directors, officers, partners, and owners of Keystone Automotive and their family
members, and Plaintiff did not fall under any of these categories. Compl. ¶ 30. According to the
Complaint, this "purported differentiation between: (1) directors, officers, partners, owners and
their family members; and (2) other persons qualifying for benefits, in the determination of
eligibility for recovery of uninsured and/or underinsured motorist benefits is violative of the
[Pennsylvania] Motor Vehicle Financial Responsibility Law." Compl. ¶ 38. Further, Plaintiff
contends that although the Pennsylvania MVFR Law permits a named insured to waive
uninsured motorist coverage, here Defendant "has failed to produce a valid Rejection of

2

Uninsured Motorist Coverage" as required by section 1731(b) of the MVFR. Accordingly, Plaintiff contends that he is entitled to uninsured motorist coverage under the Policy. Compl. ¶ 49.

Under Count I of the Complaint, Plaintiff seeks declaratory relief, requesting that the Court enter an order declaring, among other things, that the Policy "is required to provide uninsured motorist coverage to [Plaintiff] in connection with injuries sustained in the motor vehicle accident ." Compl. ¶ 99. Under Count II, Plaintiff brings breach of contract claims, alleging that Defendant breached the insurance policy that applied to him and seeking judgment in his favor for uninsured motorist benefits. Compl. ¶¶ 100-126. Under Count III, Plaintiff alleges that Defendant acted in bad faith in denying coverage and seeks compensatory and punitive damages. Compl. ¶¶ 127-45.

On June 26, 2014, Judge Smith issued the above-mentioned Order to Show Cause concerning the Court's jurisdiction. ECF No. 34. In that Order, Judge Smith observed that the present action includes claims for declaratory and coercive relief. Id. He further observed that "federal courts must resolve questions of jurisdiction and justiciability before reaching the merits of a case" and that the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, textually confers discretionary jurisdiction upon federal courts in adjudicating claims for declaratory relief. Id. (citing 28 U.S.C. § 220l(a) (stating that a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought") (emphasis added)). Further, Judge Smith observed that this discretion is guided by the United States Court of Appeals for the Third Circuit's recent decision in Reifer v. Westport Insurance Corp., 751 F.3d 129 (3d Cir. 2014), which held that district courts are to consider

factors beyond the existence of parallel state proceedings, including the nature of any state law claims, in determining whether to exercise DJA jurisdiction. Id.

The parties submitted briefs in response to the Order to Show Cause, and Judge Smith held oral argument on this issue on July 18, 2014. See ECF No. 43. On February 9, 2015, the case was reassigned from the calendar of Judge Smith to the calendar of the Undersigned. ECF No. 45.

## II.     Legal Standards

In Reifer, the Third Circuit Court of Appeals "clarified the contours of DJA discretion by providing district courts with a uniform and comprehensive approach to resolving questions of jurisdiction when litigants request the remedy of a declaratory judgment." See State Nat. Ins. v. Landis, No. CIV.A. 14-607, 2015 WL 291722, at *4 (E.D. Pa. Jan. 15, 2015). It did so by "establishing a framework, comprised of two, interlocking parts, for trial courts to apply." Id. "The first part of the analysis takes the form of a rebuttable presumption scheme, with the presence or absence of parallel state proceedings serving as the fulcrum." Id. at *5. Under this analysis, "the absence of pending parallel state proceedings creates a rebuttable presumption in favor of jurisdiction unless good reasons exist for overriding this presumption. In converse, the presence of pending parallel state proceedings creates a rebuttable presumption against jurisdiction unless, again, good reasons exist for overriding this presumption." Id.

"The second part of the Reifer analysis, in turn, is devoted to guiding a court's discretion in determining whether to override the applicable presumption." Id. "This part of the analysis takes the form of a multi-factor balance test, the application of which 'should be articulated in a record sufficient to enable' effective appellate review." Id. (quoting Reifer, 751 F.3d at 147). The factors that a court should consider include the following:

1. the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
2. the convenience of the parties;
3. the public interest in settlement of the uncertainty of obligation;
4. the availability and relative convenience of other remedies;
5. a general policy of restraint when the same issues are pending in a state court;
6. avoidance of duplicative litigation;
7. prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and
8. (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

Reifer 751 F.3d at 146.

In addition, "[a]s the circumstances dictate, courts may also be required to consult additional guideposts, such as whether federal interests would be served by hearing the matter in federal court and whether a state forum is better suited to deal with any state-law issues." Landis, 2015 WL 291722, at *6.

Under the particular circumstances present in Reifer, the Court concluded that the District Court's decision to decline to exercise its DJA jurisdiction "was proper because the lack of pending parallel state proceedings was outweighed by another relevant consideration, namely, the nature of the state law issue raised by [the plaintiff]." Reifer, 751 F.3d at 148. The Court of Appeals held that "[w]here state law is uncertain or undetermined, the proper relationship between federal and state courts requires district courts to 'step back' and be 'particularly reluctant' to exercise DJA jurisdiction. . . . The fact that district courts are limited to predicting— rather than establishing—state law requires 'serious consideration' and is 'especially important in insurance coverage cases.'" Id. (quoting State Auto Ins. v. Summy, 234 F.3d 131, 135-36 (3d Cir. 2000)).

The case before the Court in Reifer involved only declaratory claims and not, as here, a mix of declaratory and coercive claims. The Third Circuit Court of Appeals noted in Reifer that

it has "never ruled on the legal standard a district court must apply when addressing whether it may decline jurisdiction when both declaratory and legal relief are claimed." Id. at 136 n.5. The Court further noted that its "sister circuits are 'sharply divided' and advance four different standards," and that district courts within the Third Circuit "have also embraced competing proposals." Id.

Regarding these competing proposals, the United States District Court for the Western District of Pennsylvania recently observed that "[a]lthough there is . . . no consensus among the District Courts in this Circuit as to how mixed claim actions should be approached, in several recent decisions, District Courts in the Third Circuit have followed the so-called 'heart of the matter' or 'essence of the lawsuit' approach." Elec. Claims Processing, Inc. v. M.R. Sethi, M.D., S.C., No. 3:12-CV-249, 2013 WL 243594, at *3 (W.D. Pa. Jan. 22, 2013). Under this approach, the court "examines the relationship between the claims, and determines what the 'essence of the dispute' concerns." Id. (quoting ITT Indus., Inc. v. Pac. Emp'rs. Ins., 427 F. Supp. 2d 552, 566–67 (E.D. Pa. 2006)). "Courts following this approach have been persuaded that 'an approach that examines the crux of the litigation, and carefully considers the law surrounding a court's discretionary exercise of jurisdiction, best accommodates a balance between the various interests at stake.'" Id. (quoting Columbia Gas of Pa. v. Am. Int'l Grp., No. 10-1131, 2011 WL 294520, at *2 (W.D. Pa. Jan. 27, 2011)). These courts have concluded that "[g]iven the administrative, jurisprudential, and other concerns" at stake in a determination of whether to exercise jurisdiction, "it is fundamentally reasonable to pull a dependent coercive claim within the ambit of the discretion afforded its declaratory counterpart." Id. (quoting Columbia Gas of Pa., 2011 WL 294520, at *9). "It would be the tail wagging the dog if the presence of a subordinate claim

were sufficient to require a federal court to hear primary claims that it has determined are better resolved elsewhere." Id. (quoting Columbia Gas of Pa., 2011 WL 294520, at *9).

Other courts, however, have rejected the "heart of the matter" test, finding that it "fails to give adequate consideration" to the Supreme Court's statement in Colorado River Water Conservation Distrist v. United States, 424 U.S. 800 (1976), that where a federal lawsuit involves so-called "coercive" claims seeking compensatory damages or injunctive relief, a federal court has "a virtually unflagging obligation" to exercise its jurisdiction. See Perelman v. Perelman, 688 F. Supp. 2d 367, 377 (E.D. Pa. 2010) (quoting Colorado River, 424 U.S. at 817). In Perelman, for example, the Court rejected the "heart of the matter" test and other tests in favor of the "independent claim" test, according to which "a court must first determine if the coercive claims are non-frivolous and could have been brought 'independently' in federal court, without the accompanying declaratory action." Id. If so, the court has no discretion to dismiss the coercive claims. Id.

## III.    Analysis

Defendant contends that the Court should apply the "independent claim" test, citing the analysis in Perelman. However, the Court finds that "[t]o apply the Colorado River standard to actions containing both declaratory judgment and coercive claims without an analysis of the facts at hand would be to ignore the Supreme Court's specific recognition that declaratory judgment actions necessitate a different treatment than other types of cases," see ITT Indus., Inc. v. Pac. Employers Ins., 427 F. Supp. 2d 552, 557 (E.D. Pa. 2006), and will therefore apply the "heart of the matter" or "essence of the lawsuit" approach to the mixed claims in this case.

Defendant further maintains that even under the "heart of the matter" test, this Court should retain jurisdiction because "[t]he heart of this action is not a request for declaratory

relief." Def's Reply Regarding Order Show Cause 4, ECF No. 40. Defendant contends that "[t]he purpose of the Declaratory Judgment Act is to provide useful judgments that clarify legal relationships so that parties 'make responsible decisions about the future.'" Id. (quoting Step–Saver Data Syst., Inc. v. Wyse Tech., 912 F.2d 643, 649 (3d Cir. 1990)). In this case, however, Defendant maintains that it "either did or did not breach a prior contractual obligation to provide uninsured motorist benefits" and, accordingly, "while the plaintiff has plead[ed] a claim characterized as a claim for 'declaratory relief,' what he really seeks by his Complaint is to recover money damages." Id. at 5 (emphasis in original).  Plaintiff contends that this dispute is at its heart a declaratory judgment matter and that it is analogous to ITT Industries, in which the court "addressed a challenge to jurisdiction in an action seeking a declaration of rights and obligations under a policy of insurance" in addition to claims for bad faith and breach of contract. Pl.'s Reply Mem. Regarding Jurisdiction 3, ECF No. 38 (citing ITT Industries, 427 F. Supp. 2d at 557). In that case, the Court applied the "heart of the matter" test and determined that "the essence of the dispute concerns the scope of the insurance coverage" and that the court therefore "must rule on this question" before addressing the plaintiff's breach of contract and bad faith claims.  ITT Industries, 427 F. Supp. 2d at 557.

The Court agrees with Plaintiff and finds that the "heart of the matter" in this case is that Plaintiff is seeking a declaration that he is entitled to uninsured motorist benefits under Defendant's Policy. As in ITT Industries, "the outcome of the bad faith and breach of contract claims depends on the resolution of the declaratory judgment claims." See id. The fact that Plaintiff is also seeking damages is not determinative of whether this dispute is at heart a declaratory judgment dispute. See Reifer, 751 F.3d at 136 ("[S]imply because additional recovery would likely flow to [a plaintiff] as a result of a declaration in her favor does not

preclude applicability of the DJA"). Although, as <u>Reifer</u> observed, "[i]t may, in some circumstances, be possible for a party's claim for legal relief to masquerade as a declaratory judgment, improperly activating discretionary jurisdiction," <u>id.</u> at 136, the Court finds that this is not the case with the matter at hand. Accordingly, having determined that the heart of the matter is Plaintiff's declaratory judgment claim, it is appropriate to consider whether to exercise this Court's discretionary jurisdiction under the DJA, applying the analysis set forth in <u>Reifer</u>.

As noted above, under <u>Reifer</u>, because there is no parallel state litigation in this case, there is a rebuttable presumption in favor of jurisdiction unless good reasons exist for overriding this presumption. Considering the eight factors enumerated in <u>Reifer</u>, the Court finds that one factor, "the convenience of the parties," weighs in favor of retaining jurisdiction. Conversely, the Court finds that one factor, "the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy," weighs against retaining jurisdiction, in light of the fact that Plaintiff has raised additional claims beyond his request for declaratory relief. The Court finds that the remaining factors are either neutral or non-applicable. Ultimately, the Court finds that the nature of the state law issues in this case outweighs the presumption in favor of jurisdiction. As the Honorable Lawrence F. Stengel observed in his Order in <u>Easterday v. Federated Mutual Insurance</u>, No. 14-cv-01415, denying a motion to consolidate the instant action with the <u>Easterday</u> case, the instant action involves several "issues of first impression [that] have not been addressed by the courts in Pennsylvania." <u>See</u> <u>Easterday v. Federated Mut. Ins.</u>, No. 14-cv-01415, slip op. at 10 (E.D. Pa. March 24, 2015). Specifically, Judge Stengel observed that in the instant action:

> there is a question as to whether an insurer may create two tiers of eligible claimants for recovery of uninsured and underinsured motorist benefits under the Pennsylvania MVFR Law allowing benefits to the first tier while denying benefits to the second tier. Also, there is the question as to whether an insurer may utilize a

rejection mandated by the Pennsylvania MVFR Law but contend that it only applies to the second tier of claimants, allowing the first tier to recover.

Id. at 9-10. In addition, this case may involve the issue of whether the uninsured motorist rejection language of section 1731(b) of the Pennsylvania MVFR Law applies to commercial policies. As Defendant acknowledges, "[n]o Pennsylvania state court has evaluated" this particular issue. Mem. Supp. Def.'s Mot. Summ. J. 9, ECF No. 19-1. As the Court in Reifer observed, "[t]he fact that district courts are limited to predicting—rather than establishing—state law requires 'serious consideration' and is 'especially important in insurance coverage cases.'" Reifer, 751 F.3d at 148 (quoting Summy, 234 F.3d at 135). In sum, because of the nature and novelty of the state law issues raised by Plaintiff, the Court finds that declining jurisdiction is proper in this case.

## IV.    Conclusion

For the reasons discussed herein, this matter is remanded to the Court of Common Pleas of Philadelphia County. A separate order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

10