UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

BRYAN RARICK, *individually and on behalf*     :
*of a class of similarly situated persons,*     :
    :
           Plaintiff,     :
          v.     :       No. 2:13-cv-03286
    :
FEDERATED SERVICE INSURANCE     :
COMPANY,     :
    :
          Defendant.     :

_____

**O P I N I O N**
**Plaintiff's Motion for Partial Summary Judgment, ECF No. 65—Denied**
**Defendant's Motion for Summary Judgment, ECF No. 66—Granted**

**Joseph F. Leeson, Jr.**                                               **July 10, 2018**
**United States District Judge**

       While driving a truck owned and insured by his employer, Keystone Automotive

Operations, Inc., Plaintiff Bryan Rarick was injured in a car accident in 2011. He sought to

recover for his injuries from the truck's insurer, Defendant Federated Mutual Insurance Co.,

under the Uninsured Motorist/Underinsured Motorist ("UM/UIM") provisions of Keystone's

policy. Federated denied his claim because Keystone had rejected UM/UIM coverage for all

those insured by its commercial policy, except owners, managers, and their families. Rarick

brought this action challenging Federated's denial of benefits as a violation of Pennsylvania

insurance law. This opinion addresses cross-motions for Summary Judgment filed by Rarick and

Federated. For the reasons set forth below, this Court denies Rarick's Motion for Partial

Summary Judgment and grants Federated's Motion for Summary Judgment.

# I. FACTS & PROCEDURAL BACKGROUND

The following facts are taken from the Joint Stipulation of Facts.

On June 27, 2011, Rarick was driving a truck owned by his employer, Keystone Automotive Operations, Inc. ("Keystone"). Stip. Facts ¶ 1, ECF No. 62. Keystone was the holder of a commercial automotive insurance policy issued by Federated, intended to cover the vehicles owned by Keystone. *Id.* ¶ 2. It is important to note from the outset that a default insurance policy carries with it Uninsured Motorist and Underinsured Motorist ("UM/UIM") benefits pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"). *See* 75 Pa. Cons. Stat. § 1731(a). In order for these benefits to be excluded from a policy, they must be properly rejected pursuant to the MVFRL. *See id.* §§ 1731(b)-(c).While operating a vehicle covered by the policy, Rarick was involved in an accident. Stip. Facts ¶ 1. Rarick filed a claim under the Federated policy on January 18, 2013, which Federated denied by letter on January 25, 2013 because the policy excluded UM/UIM benefits for employees. *Id.* ¶ 3, 5. Rarick then requested a copy of the UM/UIM section of the policy. *Id.* ¶ 6. After commencing this action against Federated, Rarick requested, via email, a copy of the UM/UIM rejection form for the Keystone policy. *Id.* ¶ 9. Federated provided the forms the following day, August 6, 2013. Both the UM/UIM rejection form and the UM/UIM Endorsements and Declarations attached to the Keystone Policy state that UM/UIM coverage has been rejected for employees but elected for directors, officers, partners, owners, and their family members. *See* Stip. Facts Ex. A at 39; Stip. Facts Ex. I at 1-2. Rarick is not a director, officer, partner, or owner, of Keystone, nor is he a family member of such. Stip. Facts ¶ 15-16.

Rarick filed this action primarily claiming that the coverage scheme created by Federated is unlawful under the MVFRL. *See* Notice of Removal Ex. A. ¶ 37-38, ECF No. 1 [hereinafter

"Complaint"]. He asserts that UM/UIM benefits must be either rejected for all insureds under a policy or accepted for all insured under a policy. *See* Pl.'s Supp. Mem. 5, 11-15, ECF No. 65-1. Rarick has since filed a Motion for Partial Summary Judgment on the grounds that (1) the coverage scheme is unlawful under the MVFRL, (2) the delayed production of the rejection form means that Federated is estopped from relying on it, and (3) the policy is ambiguous. *See id.* 2-3.

Federated filed a Motion for Summary Judgment on the grounds that (1) Rarick does not have standing to challenge the rejection of UM/UIM benefits, (2) the UM/UIM rejection is compliant in both form and substance, (3) the rejection is unambiguous, and (4) Federated is not estopped from asserting the valid rejection as a defense. *See* Def.'s Supp. Mem. 2-3, ECF No. 66-1.

## II.     LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 257 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56;

*Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).  "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  *Big Apple BMW, Inc. v. BMW of N. Am. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

## III.    ANALYSIS

### A.    A third-party beneficiary has standing to challenge the statutory validity of a waiver of UM/UIM benefits.

Federated alleges that Rarick does not have statutory standing to challenge the rejection of UM/UIM benefits. *See* Def.'s Supp. Mem. 20, ECF No. 66-1. Federated argues that only those who appear as a "named insured" in the policy have standing to challenge the rejection. *Id.*

Pennsylvania courts recognize that "a party seeking judicial resolution of a controversy in this Commonwealth must, as a prerequisite, establish that he has standing to maintain the action." *Nye v. Erie Ins. Exch.*, 470 A.2d 98, 100 (Pa. 1983) (citing *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 280-81 (Pa. 1975)). "A person who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved thereby. . . ." *Id.* Because this Court is sitting in diversity and hearing a state law question, it must keep in mind that "[w]hen the state's highest court has not addressed the precise issue presented, a federal court must predict how the state's highest court would resolve the issue." *Travelers*

*Indem. Co. v. Stengel*, 512 F. App'x 249, 250-51 (3d Cir. 2013) (citing *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1373 (3d Cir. 1996)). Here, the Pennsylvania Supreme Court has not addressed this issue, and thus, it is the duty of this Court to predict how the Pennsylvania Supreme Court would rule.

Federated argues that recent Pennsylvania Superior Court cases stand for the proposition that individuals who are not named insureds on a policy, like Rarick, do not have standing to challenge a waiver of UM/UIM benefits by a named insured. *See* Def.'s Supp. Mem. 20. Federated first cites to *Peters v. National Interstate Insurance Co.*, a 2015 case that involved an employee who was attempting to make a claim against his employer's insurer for UM/UIM benefits following an accident. 108 A.3d 38, 41 (Pa. Super. Ct. 2014). The court began by noting that "an injured person who makes a claim for uninsured motorist benefits under a policy to which he is not a signatory is . . . a third party beneficiary." *Id.* at 46 (citing *Egan v. USI Mid-Atlantic, Inc.*, 92 A.3d 1, 20 (Pa. Super. Ct. 2014)).[1] Further, the court concluded that because the employee was not a "named insured," he had no "legally cognizable claim of UIM coverage"[2] where the coverage had been rejected by a named insured. *Id.* (citing *Been v. Empire Fire & Marine Ins. Co.*, 751 A.3d 238 (Pa. Super. Ct. 2000)).

However, *Peters* did not reach the issue that is central to Rarick's claim because the Pennsylvania MVFRL did not apply to the driver, an Ohio resident, nor the car, an Ohio-registered vehicle that was principally garaged in Ohio. *Id.* at 45. While *Peters* stated that a third-

---

[1]     Federated cites *Egan* for the correct proposition that non-signatories are third-party beneficiaries. *Egan*, 92 A.3d at 23. However, the *Egan* court did not mention at any point that the plaintiff was unable to recover because of his or her status as a third-party beneficiary.

[2]     Federated refers to this case for the proposition that a third-party beneficiary does not have standing to sue. *See* Def.'s Supp. Mem. at 21-22. However, it is unclear whether the language "no legally cognizable claim" is indicative of standing, or rather, represents a conclusion based on the finding that the MVFRL was inapplicable to the facts before the *Peters* court. *See Peters*, 108 A.3d at 41.

party beneficiary has "no legally cognizable claim of UIM coverage" where it had been rejected, the court did not decide whether the rejection of the UIM benefits was legally adequate. *Id.* ("However, we need not reach the question of the legal adequacy of the rejection form, because, as we have already decided, the Pennsylvania MVFRL does not apply to Appellees."). By challenging Federated's ability to bifurcate the company and provide UM/UIM coverage to only part of its personnel, Rarick is essentially challenging the validity of the UM/UIM waiver. Therefore, the holding of *Peters* does not apply to Rarick's claim.

Federated then cites *Petty v. Federated Mutual Insurance Co.* for the proposition that third-party beneficiaries do not have standing to challenge the rejection of UM/UIM benefits. Federated cites specifically to a footnote, which states that the court could have used "an alternate basis" to affirm the judgment. 152 A.3d 1020, 1026 n.3 (Pa. Super. Ct. 2016). The court's primary basis for affirming the lower court was that the waiver of the UM/UIM benefits was valid under the MVFRL. *Id.* at 1025-26. However, the court stated in the footnote that, in the alternative, because "[a]ppellants were not named insureds, and [a named insured] had properly waived UIM coverage, [a]ppellants had no legally cognizable claim to a UIM benefit that did not exist." *Id.* at 1026. The court found that an employee could not make a claim for benefits that did not exist by virtue of a valid waiver. *See id.* at 1026 n.3. While *Petty* decided the validity of the waiver prior to addressing the issue of standing in a footnote, this Court has not yet decided the validity of the waiver. Therefore, the alternative basis proposed by the footnote in *Petty* is not dispositive of the matter of standing as it is predicated on the finding of a valid waiver.

Other courts have found that third-party beneficiary employees have standing to challenge the validity of a waiver made by the named insured, the employer. In 2007, the District Court for the Western District of Pennsylvania, applying Pennsylvania law, held that a third-

party beneficiary "clearly . . . has standing in this instance to argue either that [defendant] failed to execute a valid waiver . . . or that the statutory limitation of UIM benefits . . . is invalid." *Yocum v. Federated Mut. Ins. Co.*, No. 2:05cv1789, 2007 WL 2743865, at *4 (W.D. Pa. Sept. 18, 2007). The *Yocum* case is factually similar to the situation before this Court. An employee of a heating and cooling company insured by Federated was struck by an underinsured motorist while the employee was acting within the scope of his employment. *Id.* at *2. Because the underinsured motorist's policy did not cover the extent of the employee's injuries, the employee submitted a claim for UIM benefits under his employer's policy with Federated. *Id.* Federated denied the claim because the heating and cooling company had rejected UIM benefits. *Id.* The court found that the injured employee had standing to seek declaratory relief as to the validity of the UIM rejection. *Id.*

In 2011, the Middle District of Pennsylvania, again applying Pennsylvania law, found that a third-party beneficiary was eligible for both "those benefits that [defendant], as the insured, wished to provide him," and "those benefits which [defendant] may not have wished to provide him but which [defendant] did not disclaim in conformance with Pennsylvania law." *Douglas v. Discover Prop. & Cas. Ins. Co.*, 810 F. Supp. 2d 724, 732 (M.D. Pa. 2011). Similar to *Yocum*, *Douglas* involved an employee attempting to claim UIM benefits as a third-party beneficiary from his employer's policy following an accident involving a company vehicle. *Id.* at 726.

Pennsylvania courts have allowed similar claims challenging the validity of a waiver by third-party beneficiaries to continue without mention of a standing issue, including *National Union Fire Ins. Co. v. Irex Corp*, No. 96-3902, 1997 WL 1133511, at *1 (Pa. Ct. Com. Pl. June 11, 1997). There, the estate of the decedent was allowed to maintain a claim, as a third-party

beneficiary, challenging the validity of a UM/UIM waiver signed by the decedent's employer. *Id.* at *5-6; *see also Heller v. Pennsylvania League of Cities & Municipalities*, 32 A.3d 1213, 1215 (Pa. 2011) (allowing Borough employee, as a third-party beneficiary, to challenge validity of provision of UIM benefit waiver in policy issued to Borough without commenting directly on issue of standing); *Peele v. Atl. Express Transp. Grp., Inc.*, 840 A.2d 1008, 1009-10 (Pa. Super. Ct. 2003) (allowing two employees, as third-party beneficiaries, to challenge the applicable UM/UIM coverage limits of employer's policy).

These cases are not inconsistent with those cited by Federated against Rarick's standing. As stated previously, *Peters* never reached the issue of the validity of the rejection because the MVFRL did not apply to the Ohio driver or the Ohio-garaged car. It follows that a third-party beneficiary would not have a claim to benefits when benefits are validly waived. Therefore, the right of a third-party beneficiary to challenge the validity of the waiver does not conflict with the inability of a third-party beneficiary to make a claim where the MVFRL does not apply. Furthermore, *Petty* had addressed the issue of standing only after concluding that the waiver was valid.

Neither *Petty* nor *Peters* repudiate the holdings in *Yocum* and *Douglas* that a third-party beneficiary may challenge the validity of a rejection of UM/UIM benefits. *See id.* (discussing an "alternate basis" for the order affirming where the waiver has already been adjudicated as "valid"); *Peters*, 108 A.3d at 46 (stating court did not reach the question of validity of rejection because statute was wholly inapplicable). Therefore, because he challenges the validity of Keystone's rejection of UM/UIM benefits, Rarick has standing.

Federated makes the policy argument that allowing a non-named insured to challenge "UM and UIM rejection forms directly contravenes the cost containment objectives of the

MVFRL." Def.'s Supp. Mem. 25. Federated asserts that insurance companies would be required to provide post hoc "gratis coverage" to a third-party beneficiary through reformation of the contract if the beneficiary is afforded standing in a suit such as the one before this Court. *Id.* at 25-26 (citing *O'Connell v. Progressive Ins. Co.*, No. 200906570, 2012 WL 12023357, at *7 (Pa. Ct. Com. Pl. Aug. 10, 2012)). However, Federated's attempt to characterize the claim as "chang[ing] the coverage decisions made by the named insured" is misleading. *Id.* at 25. Rarick's claims do not challenge his employer's decision to reject coverage for employees. Rather, the claims challenge the legal validity of the rejection itself.

Contrary to Federated's contention, allowing a third-party beneficiary to challenge the validity of a rejection does not mean the named insured is "financially penalized for coverages they consciously decided to reject," *id.*; rather, allowing third-party beneficiaries standing to challenge the rejection provides assurance that the mandate of specific compliance with § 1731 of the MVFRL is met. The MVFRL requires rather strict compliance with the statutorily-provided rejection form. *See American Int'l Ins. Co. v. Vaxmonsky*, 916 A.2d 1106, 1110-11 (Pa. Super. Ct. 2006) (holding UIM rejection as null and void where insurer omitted word "all" in front of phrase "all losses and damages"). If a third-party beneficiary did not have standing to challenge the validity of the rejection, statutorily invalid rejections would go largely unchallenged.

Therefore, this Court, in undertaking an analysis to predict the outcome of such an issue before the highest court in Pennsylvania, finds that Rarick has the requisite standing to maintain his claims against Federated.

**B.** **Title 75 of Pennsylvania Consolidated Statutes section 1731, which requires UM/UIM benefits to be provided unless properly rejected, applies to commercial fleet policies.**

Federated argues, in support of its Motion for Summary Judgment, that MVFRL § 1731 does not apply to commercial auto policies. *See* Def.'s Supp. Mem. 26. This argument rests, in large part, on a 2007 Pennsylvania Supreme Court decision analyzing the applicability of MVFRL § 1738 to a commercial fleet policy. *Id.* at 27-28 (citing *Everhart v. PMA Ins. Grp.*, 938 A.2d 301, 301 (Pa. 2007)). As stated previously, "[w]hen the state's highest court has not addressed the precise issue presented," it is the duty of this Court to "predict how the state's highest court would resolve the issue." *Travelers Indem. Co. v. Stengel*, 512 F. App'x 249, 250-51 (3d Cir. 2013) (citing *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1373 (3d Cir. 1996)). Federated contends that the Pennsylvania Supreme Court has addressed the issue of § 1731's applicability through the reasoning in *Everhart*. *See* Def.'s Supp. Mem. 29. However, *Everhart* dealt with § 1738, the provision that requires mandatory stacking of coverage. *Everhart*, 938 A.2d at 304. Here, we are addressing the applicability of § 1731. *See* Def.'s Supp. Mem. 26. For the reasons set forth below, I conclude that MVFRL § 1731 applies to commercial policies.

 "[T]he MVFRL is to be liberally construed in order to afford the greatest possible coverage to injured claimants." *Allstate Prop. & Cas. Co. v. Squires*, 667 F.3d 388, 396 (3d Cir. 2012) (citing *Houston v. SEPTA*, 19 A.3d 6, 14 (Pa. Commw. Ct. 2011)). "In close or doubtful insurance cases, a court should resolve the meaning of insurance policy provisions or legislative intent in favor of coverage for the insured." *Id.*

Federated begins its argument with an analysis of the language of MVFRL § 1731. *See* Def.'s Supp. Mem. 27. Federated excerpts from the required rejection form text in § 1731(b) which states in relevant part:

By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

75 Pa. Cons. Stat. § 1731(b) (Westlaw through 2018 Reg. Sess. Act 16).

Federated claims that language such as "individual," "*myself* and all *relatives*," and "*my household*" evidences the General Assembly's intent to limit the scope of § 1731 to "*natural persons*." *Id.* (emphasis in original). However, this argument is foreclosed by 1 Pa. Cons. Stat. § 1902, which prescribes rules for statutory interpretation.[3] *See* 1 Pa. Cons. Stat. § 1902 (Westlaw through 2018 Reg. Sess. Act 16).  Applying § 1902 to MVFRL § 1731, the Third Circuit Court of Appeals determined that "words of the masculine gender include feminine and neuter forms, and thus 'he' may stand for a corporation." *Travelers Indem. Co. of Ill. v. DiBartolo*, 171 F.3d 168, 170 (3d. Cir. 1999) (citing 1 Pa. Cons. Stat. § 1902); *see also Caron v. Reliance Ins. Co.*, 703 A.2d 63, 68 & n.9 (Pa. Super. Ct. 1997) (stating that the term "you" in an insurance policy referred to the employer, a corporation).  The appellate panel agreed with the district court's finding that "the 'linguistic style of the [§ 1731] rejection form, designed for easy comprehension,' does not evidence a legislative intent to prohibit corporations . . . from executing a waiver." *DiBartolo*, 171 F.3d at 170 (citing *Travelers Indem. Co. of Ill. v. DiBartolo*, No. Civ. A. 96-6238, 1998 WL 398144, at *3 (E.D. Pa. 1998)) (footnote omitted). The court concluded, "Pennsylvania allows a corporation to waive UM coverage when the corporation is a

---

[3]      Section 1902 states in relevant part, "Words used in the masculine gender shall include the feminine and neuter." § 1902.

named insured."[4] *Id.* at 172. In order for a corporation to have the ability to waive coverage under § 1731(b), § 1731 must apply to commercial policies. *See id.* at 171-72.

Federated's next argument relies on the aforementioned *Everhart* case. *See* Def.'s Supp. Mem. 27-28. The Supreme Court of Pennsylvania addressed whether § 1738, which requires mandatory stacking of UM/UIM benefits, applies to commercial fleet policies. *Everhart*, 938 A.2d at 304. Because the Court has already addressed the use of personal pronouns in the MVFRL, the following analysis will focus on Federated's second argument: that applying § 1731 to commercial policies would undercut the cost-containment objectives of the MVFRL.

In *Everhart*, the court stated that the "primary purpose of the MVFRL . . . was to control the cost of insurance such that a higher percentage of drivers would be able to afford insurance." *Id.* at 306 (citing *Craley v. State Farm Fire & Cas. Co.*, 895 A.2d 530, 541 n.17 (Pa. 2006). The court found that requiring commercial policy-holders to stack coverage under § 1738 would lead to "prohibitively expensive premium costs," thereby undercutting the affordability objective of the MVFRL. *Id.* at 306. In addition, the court had a wealth of case law at its disposal that already held that § 1738 does not apply to commercial policies.[5] *Id.* at 306 ("At the time of the 1990 amendment to the MVFRL, there already existed a body of decisional law holding that stacking of uninsured and underinsured motorist coverage did not apply to commercial fleet policies.").

Federated argues that those same prohibitive costs discussed in *Everhart* would result here if § 1731 is deemed applicable to commercial fleets. *See* Def.'s Supp. Mem. 29. This

---

[4]     Keystone, Rarick's employer, is the named insured on the policy at issue here. Def.'s Statement Undis. Facts ¶ 4, ECF No. 66-2.

[5]     *See Everhart*, 938 A.2d at 306 (citing *Lastooka v. Aetna Ins. Co.*, 552 A.2d 254 (Pa. Super. Ct. 1988) (holding stacking of UM/UIM coverage did not apply to commercial fleet policies); *Thompson v. Royal Ins. Co.*, 521 A.2d 935 (Pa. Super. Ct. 1986) (same); *Boris v. Liberty Mut. Ins. Co.*, 515 A.2d 21 (Pa. Super. Ct. 1986) (same); *Miller v. Royal Ins. Co.*, 510 A.2d 1257 (Pa. Super. Ct. 1986) (same)).

concern has been addressed by both the District Court for the Middle District of Pennsylvania and the Pennsylvania Superior Court, both of which concluded that § 1731 does not pose the same risk of increasing costs as § 1738. The Middle District Court described the mandatory stacking of UM/UIM benefits under § 1738 in a commercial fleet context as "patent absurdity," referencing the astronomical costs that such a requirement would levy on the corporation purchasing the policy. *Douglas v. Discover Prop. & Cas. Ins. Co.*, 810 F. Supp. 2d 724, 730 (M.D. Pa. 2011). However, the court stated that this absurdity of expense, which it described as "the strongest explanation for [the Pennsylvania Supreme Court's] decision in *Everhart,*" does not result from "forcing corporations to comply with the simple language found in § 1731(c)." *Id.* (footnote omitted).

The Pennsylvania Superior Court agreed with the rationale of *Douglas* in concluding, "as a matter of law, [§] 1731 mandates that UM/UIM coverage must be offered in the commercial context. . . ." *Egan v. USI Mid-Atlantic, Inc.*, 92 A.3d 1, 11 (Pa. Super. 2014). The court also cited to two previous Pennsylvania cases, which applied § 1731 to commercial policies. *See Blakney v. Gay*, 657 A.2d 1302, 1303 (Pa. Super. Ct. 1995) (concluding that a corporation may waive UM coverage under MVFRL § 1731); *Nat'l Union Fire Ins. Co. v. Irex Corp.*, No. 96-3902, 1997 WL 1133511, at *1149-50 (Pa. Ct. Com. Pl. June 11, 1997) (holding a corporate defendant liable for its attempt to reject UM/UIM benefits in non-compliance with § 1731).

*DiBartolo* provides strong authority for the conclusion that the personal pronoun language in § 1731 does not preclude commercial application of the section. *See DiBartolo*, 171 F.3d at 170. *Douglas* and *Egan*, both decided post-*Everhart*, suggest that the cost-containment objectives of the MVFRL do not preclude the application of § 1731 to commercial policies. *See Douglas*, 810 F. Supp. 2d at 730 (finding that "no such absurdity" of expense exists when

corporations are forced to comply with § 1731); *Egan*, 92 A.3d at 11 (quoting Douglas' conclusion regarding the concern of heightened expense for businesses forced to comply with § 1731).

Therefore, this Court, in undertaking an analysis to predict the outcome of such an issue before the highest court in Pennsylvania, finds that § 1731 applies to commercial policies.

**C.      Federated's rejection of UM/UIM benefits with respect to the Keystone policy is valid, both in the form of the waiver and in the coverage scheme it creates.**

Both Rarick and Federated focus on the validity of the waiver in their Motions for Summary Judgment. *See* Pl.'s Supp. Mem. 5, 11-15; Def.'s Supp. Mem. 29-41. Rarick contends that the waiver is invalid because it creates an unlawful "two-tier" system of coverage. *See* Pl.'s Supp. Mem. 5. Federated asserts in its motion that the waiver is valid with respect to its language and the system of insurance that it creates. *See* Def.'s Supp. Mem. 29-30, 33.

**1.      The language of the rejection form used by Federated with respect to Keystone's rejection of UM/UIM benefits complies with MVFRL § 1731.**

As a threshold matter, this Court must determine if the language of the waiver complies with the requirements set forth in § 1731(b). *See* § 1731(c.1) ("Any rejection form that does not specifically comply with this section is void."). Section 1731(b) governs the form of a valid rejection for uninsured motorist coverage. The standard rejection form provided by § 1731(b) states:

> By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

75 Pa. Cons. Stat. § 1731(b).

Although the MVFRL requires specific compliance, it does not require a "verbatim reproduction of the statutory rejection form." *Ford v. Am. States Ins. Co.*, 154 A.3d 237, 245 (Pa. 2017). A form "specifically complies with [§] 1731 of the MVFRL even if the form contains *de minimis* deviations from the statutory rejection form . . . ." *Id.* at 245-46. Furthermore, a rejection form may still specifically comply if additional language is included in conjunction with the required statutory language. *See King v. U.S. Xpress, Inc.*, 205 F. Supp. 3d 675, 680 (E.D. Pa. 2016). However, if either the additional language or deviation causes an ambiguity, the waiver may be found to be non-compliant with the MVFRL. *See id.* (citing *American Int'l Ins. Co. v. Vaxmonsky*, 916 A.2d 1106, 1109 (Pa. Super. Ct. 2006)).

The text of Federated's rejection form is as follows:

> By signing this waiver, I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

Stip. Facts Ex. I, ECF No. 62-9. It is clear from the juxtaposition of the statutory text and Federated's text that the only substantive difference is the inclusion of a comma in the first sentence. *Compare* § 1731(b), *with* Stip. Facts Ex. I. There are a few deviations in the form as a whole, exclusive of the statutory text.[6] These exact deviations in Federated's form have been analyzed previously by a Pennsylvania court in *Petty v. Federated Mut. Ins. Co.*, 152 A.3d 1020, 1023 (Pa. Super. Ct. 2016). There, the court found that the deviations and additions were "hyper–technical and do not cause confusion or result in an uninformed waiver."[7] *Id.* at 1025. Furthermore, as was the case in *King*, Federated has made additions to accompany the full, exact

---

[6] The full layout of Federated's rejection form is at ECF No. 62-9, Exhibit I.
[7] The deviations included: (1) adding the phrase "option 2" to the heading; (2) using the term "coverage" instead of "protection"; (3) adding the letter "s" to the word "motorist"; and (4) failing to use all capital letters and center justification. *See Petty*, 152 A.3d at 1023.

text of § 1731(b) and there is no confusion or ambiguity created by these additions. *See King*, 205 F. Supp. 3d 675, 680.

Therefore, I recommend this Court find that the language of the waiver specifically complies with the requirements set forth under § 1731(b).

> ## 2. The system of coverage created by Federated through Keystone's commercial policy is valid under § 1731.

The majority of Rarick's argument focuses on the validity of the two-tiered coverage structure that Federated's policy with Keystone creates. *See* Pl.'s Supp. Mem. 5, 11-15. Specifically, he alleges that the MVFRL does not permit a system of insurance where some insureds under a policy have UM/UIM coverage and others do not. *See id.* at 5. Rarick contends that the MVFRL requires either acceptance of UM/UIM for all insureds or rejection of the same for all insureds. *See id.* If a corporation wants to create two separate levels of coverage, Rarick asserts that it must do so through § 1734, providing some level of UM/UIM coverage to all, but reducing the coverage limits for certain groups of people. *See id.* This issue has not yet been addressed by the Pennsylvania Supreme Court. Thus, this Court must "predict how the state's highest court would resolve the issue." *Stengel*, 512 F. App'x at 250-51 (3d Cir. 2013). Four well-established principles of Pennsylvania law compel the conclusion that Rarick's argument is incorrect and that Federated can lawfully create a system of coverage like the one before the Court.

First, the MVFRL permits corporations to set different levels of benefits for different groups of personnel within the corporation. *See Yocum*, 2007 WL 2743865, at *4 (W.D. Pa. Sept. 18, 2007) (citing *MIC Prop. & Cas. Ins. Corp. v. Crawford*, 2001 U.S. Dist. LEXIS 24212 at *2 n.1 (E.D. Pa. Oct. 29, 2001)); *see also Wiley v. Universal Underwriters Ins. Co.*, No. CV 15-5943, 2017 WL 495794, at *5 (E.D. Pa. Feb. 6, 2017) (finding that the "manner in which UIM

coverage is structured," insofar as it is rejected for employees but elected for a select few, does not violate public policy nor the MVFRL). Rarick acknowledges this principle. *See* Pl.'s Supp. Mem. 5.

Second, a corporation may fully reject UM/UIM coverage for its employees. *DiBartolo*, 171 F.3d at 170. As stated above in section IV.(b.), the Third Circuit Court of Appeals held that a corporation may use § 1731 to reject UM/UIM coverage completely. *See id.* at 172. When a corporation rejects UM/UIM coverage, the effective level of coverage for employees is $0.00. Thus, an employee's level of UM/UIM coverage may be $0.00 through a waiver that is compliant with § 1731(b) and (c).

Third, a rejection of UM/UIM benefits under § 1731 is not considered the same as a reduction of benefits under § 1734. *See Yocum*, 2007 WL 2743865, at *5. In *Yocum*, Federated attempted to argue that § 1731 did not apply because its limiting of UM/UIM coverage to $0.00 for employees was merely a reduction in benefits under § 1734 and not a true rejection pursuant to § 1731. *Id.* The court rejected this argument, finding that limiting the benefits to $0.00 was a rejection, not a reduction, and thus requires strict compliance with § 1731. *Id.* Therefore, because the level of coverage for employees at Keystone is $0.00, the Court does not need to apply § 1734; rather, the Court should look to the validity of the rejection under § 1731.

Fourth, as discussed above, the language of Federated's rejection complies with § 1731.[8]

Because (1) Pennsylvania permits different levels of UM/UIM coverage among different personnel of the insured corporation, (2) the level of coverage for a specific group of personnel may be set to $0.00, (3) § 1734 does not apply where the limiting of benefits is a rejection and not a reduction, and (4) the rejection complies with § 1731, Federated's coverage structure is

---

[8]     See Section IV.(c.)(i.)  *supra* for a discussion of the validity of the language.

lawful under the MVFRL. Nothing in the language of § 1731 suggests that a waiver of UM/UIM must be an "all-or-nothing" waiver as Rarick would have it. As long as the waiver is compliant with the rejection form of the MVFRL, it is valid.

This conclusion finds support in *Wiley v. Universal Underwriters*. In that case, the policy-holder, CarSense, rejected UM/UIM benefits for employees but elected $300,000 in UM/UIM coverage for Francis and Marion McGowan, the principals of CarSense. *Wiley*, 2017 WL 495794, at *1. The court in *Wiley* held that the system of insurance was valid under the MVFRL and was not void as a matter of public policy. *Id.* at *4-5. Rarick attempts to distinguish *Wiley* by contending that the McGowans were named insureds, and that they exercised a separate option with regard to the UM/UIM rejection.[9] *See* Pl.'s Supp. Mem. 12. However, this attempt at a distinction is unpersuasive where the facts of *Wiley* read, "*CarSense* also executed a Pennsylvania Underinsured Motorist Elective Options Form, expressly designating $300,000 of UIM coverage for the McGowans only . . . ." *Wiley*, 2017 WL 495794, at *1 (emphasis added). Therefore, the situation in *Wiley* is similar to the situation at bar insofar as the corporation, as a named insured, rejected UM/UIM benefits for one part of the corporation while electing UM/UIM benefits for selected individuals.

Furthermore, the MVFRL's objectives support finding this system of coverage lawful. Under the system proposed by Rarick, a policy-holder would be required to purchase "$15,000.00/$30,000.00" of UM/UIM coverage for all of its employees if the corporation wanted UM/UIM coverage for its executives, directors, and owners. *See* Pl.'s Opp'n Mem. 27, ECF No. 67-2. Similar to the prohibitive costs associated with the mandatory stacking provision discussed

---

[9]    Specifically, Rarick alleges that "The named insureds, Francis McGowan and Marion McGowan, however, chose to elect coverage for themselves." Pl.'s Supp. Mem. 12. This statement is inconsistent with the facts of *Wiley*. *See Wiley*, 2017 WL 495794, at *1.

*supra*, the increased costs of requiring UM/UIM coverage where an employer specifically seeks to reject it for certain groups of employees would defeat the cost-containment objective of the MVFRL.

This consideration of cost-containment objectives is supported by a recent Pennsylvania Superior Court case. *See Byoung Suk An v. Victoria Fire & Cas. Co.*, 113 A.3d 1283, 1292 (Pa. Super. Ct. 2015). There, the court was asked to determine whether a policy provision which extended coverage to a "named driver only" was consistent with the MVFRL and public policy. *Id.* The court determined that the "provision of *low-cost*, *affordable* policies in return for motor vehicle liability coverage of only the named driver . . . does not violate public policy." *Id.* (emphasis added). While the Court here deals with a different provision of the MVFRL, the same reasoning applies: to require a policy-holder to purchase UM/UIM coverage where they otherwise wish to reject it is inconsistent with the well-established objectives of the MVFRL.[10]

Rarick makes a final argument for the invalidity of Federated's coverage system on the basis of ambiguity. *See* Pl.'s Supp. Mem. 14. He claims that he is defined as an "insured" on page two of the "Pennsylvania Uninsured Motorist Coverage – Non-Stacked Endorsement" ("Endorsement") form of the policy, and an ambiguity is created because the subsequent "Limits

---

[10]     Rarick argues that cost-containment is no longer an "overriding" objective of the MVFRL and that this Court should minimize the role that it plays. *See* Pl.'s Opp'n Mem. 22. He asserts that the dominance of the cost-containment "point of view has been abandoned by the Supreme Court." *Id.* However, the concern of the Pennsylvania Supreme Court seems to be the abuse of the cost-containment objective by insurers as a justification for "restricting coverage." *See id.* at 24 (citing *Heller v. Pennsylvania League of Cities & Municipalities*, 32 A.3d 1213, 1222 (Pa. 2011)); *see also Williams v. GEICO*, 32 A.3d 1195, 1210-11 (Pa. 2011) (Baer, J. concurring) (discussing the high revenues of insurance companies and their increased discretionary spending on activities unrelated to providing coverage). Here, the Court is not dealing with an insurer who is attempting to restrict coverage post facto and reduce the coverage rights of an insured. Rather, there is a contractual agreement, requested by the corporate policy-holder, which restricts coverage in the manner that the policy-holder desired. Contrary to Rarick's implications, the Court is capable of considering *both* the "goal of maximum feasible restoration to accident victims" and the cost-containment purpose of the MVFRL.

of Insurance" form excludes him from coverage without altering the definition of "insured." *Id.*

He asserts that because he is listed as an "insured" in the Endorsement, he is owed coverage. *Id.*

at 15. However, as Rarick cautions, "a court must read the policy as a whole . . . ." *Id.* (citing

*Ramara v. Westfield Ins. Co.*, 814 F.3d 660, 677 (3d Cir. 2016)). The Endorsements for

UM/UIM coverage must be read in conjunction with the form that immediately follows: the

Uninsured and Underinsured Motorist Limit of Insurance. In fact, the Limit of Insurance form is

explicitly referenced in the same Endorsement that Rarick claims is ambiguous.[11] *See* Stip. Facts

Ex. A. at 39.[12]

Ambiguity exists in a policy where it "(1) is reasonably susceptible to different

constructions; (2) is obscure in meaning through indefiniteness of expression, or (3) has a double

meaning." *Cury v. Colonial Life Ins. Co. of Am.*, 737 F. Supp. 847, 853 (E.D. Pa. 1990) (citing

*Metzger v. Clifford Realty Corp.*, 476 A.2d 1, 5 (Pa. Super. Ct. 1984)).

Rarick's disagreement with the system of insurance created by the policy does not mean

that it is ambiguous. Rather, the documents are clear. The UM Endorsement states that

"insureds" are "legally entitled to recover." Stip. Facts Ex. A. at 31 (A.1).  It then states that an

"insured" can be "[a]nyone 'occupying' a covered 'motor vehicle' or a temporary substitute for a

covered 'motor vehicle.'" *Id.* at 32 (B.2.a.). Then, in Section D.1., the Endorsement states that

the amount the "insured" is legally entitled to recover is set forth in "the Limit of Insurance for

Uninsured Motorist Coverage shown in the Schedule or Declaration" ("Declaration"). *Id.* (D.1.).

---

[11]     Section D.1. of the Pennsylvania Uninsured Motorist Coverage – Non-Stacked
Endorsement states in relevant part, "the most we will pay for all damages resulting from one
'accident' is the Limit of Insurance for Uninsured Motorist Coverage shown in the Schedule or
Declarations." Stip. Facts Ex. A at 32. The declaration of limits immediately follows the
UM/UIM Endorsement forms. *See id.* at 39.

[12]     Because the Policy in Exhibit A contains multiple separate forms on which the
numeration resets at different points, this Court uses the ECF system of numbering to reference
the pages of the document.

In the subsequent Declaration, the amount is clearly set at $1,000,000 for "directors, officers, partners or owners . . . and their 'family members' . . . ." *Id.* at 39. Just below, the amount of UM coverage for "any other persons qualifying as 'insureds' under the WHO IS AN INSURED provision" is left blank. *Id.* The Declaration states that "[i]f no limit is shown below, no coverage is afforded to any other person." *Id.* Therefore, the blank line on the Declaration indicates that there is no UM coverage afforded to "any *other* person qualifying as 'insureds.'" *See id.* (emphasis added). Rarick, by reason of his position in the company, falls into this second category of those not afforded UM coverage.

The Endorsement and subsequent Declaration of Limits of Insurance do not contradict the UM/UIM Rejection required by § 1731. Rather, they are in accord with one another. Both the § 1731 rejection and the Endorsement state that the policy will provide UM/UIM coverage for the owners, executives, and other upper-level personnel of the company. *See id.* at 39; Stip. Facts Ex. I at 2. Both forms also state that UM/UIM coverage has been rejected for all others under the policy. *See* Stip. Facts Ex. A at 39; Stip. Facts Ex. I at 1. Therefore, the rejection form required by § 1731 does not contradict or confuse the Endorsements that lay out the details of the policy with regard to UM/UIM benefits.

Contrary to Rarick's contention, the terms are not susceptible to different constructions, nor are they indefinite such that they may be subject to multiple meanings. The system of coverage created by the policy Keystone purchased from Federated is lawful because it is neither barred by § 1731 nor ambiguous.

**D.      Federated is not estopped from asserting the valid rejection form as a defense.**

Rarick's final argument in support of his Motion for Summary Judgment asserts that Federated is estopped from using the rejection letter as a defense because the "production of the

Rejection was untimely." Pl.'s Supp. Mem. 10. He alleges in his Complaint that Federated "is aware and/or should be aware that it has no rejection of uninsured motorist coverage . . . ." Compl. ¶ 52. Rarick alleges that he relied, to his detriment, on the lack of production of a Rejection form in a timely manner. *See* Pl.'s Mot. Summ. J. ¶ 30, ECF No. 65.

Section § 1731(c.1) of the MVFRL sets out that "[i]f the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits." 75 Pa. Cons. Stat. § 1731(c.1). Furthermore, a party to an insurance action may be estopped from asserting a defense not timely raised "only when there is actual prejudice . . . ." *Mendel v. Home Ins. Co.*, 806 F. Supp. 1206, 1215 (E.D. Pa. 1992). That is to say, the party asserting estoppel must show that "the [insurer's] failure to assert all possible defenses caused the insured to act to his detriment in reliance thereon." *Id.* (citing *Fed. Ins. Co.v. Susquehanna Broadcasting Co.*, 727 F. Supp. 2d 169, 171 (M.D. Pa. 1989)).

The statutory requirement of the MVFRL that the rejection be "produce[d]," provides no time limit. *See* 75 Pa. Cons. Stat. § 1731(c.1). The text does not say "timely produce," "produce at the time of denial of payment," or assert any other time-bound formulation of the command to produce. Rather, the plain reading of the text requires that the insurer obtain and maintain a valid rejection form, such that the insurer can produce it should the form be requested. Therefore, there is no valid statutory argument that Federated has not complied with § 1731(c.1) by producing the rejection letter following the Rule 16 conference. In this instance, Federated is in compliance with that portion of § 1731(c.1).

Rarick argues that "an insurer is estopped from asserting defenses not raised at the time of initial demand." Pl.'s Supp. Mem. 9. However, Rarick's notion of estoppel as it applies to

insurance defenses is the kind of broad-scope construction that the Third Circuit has declined to adopt. *See Meth v. United Benefit Life Ins. Co.*, 198 F.2d 446 (3d Cir. 1952). In *Meth*, the insurer initially denied the claim on the basis of fraud. *See id.* at 447. Later, during the trial, the insurer raised the defense of "prior origin" of the disability as a reason for denying the claim. *See id.* The court declined to estop the insurer from relying on the second proffered defense because it concluded that "[d]enial of liability of one ground does not in all cases operate as a waiver of all other grounds." *See id.*

Relying on this Third Circuit precedent, a district court in the Eastern District of Pennsylvania clarified that "estoppel would be created only where an insurer's omission of a ground from its stated reasons for disclaimer caused detrimental reliance on the part of the insured . . . ." *Weintraub v. St. Paul Fire & Marine Ins. Co.*, 609 F. Supp. 273, 275 (E.D. Pa. 1985). The detrimental reliance alleged in the instant case is that Rarick "institute[ed] suit, thereby incurring time, expense and costs in pursuing the matter . . . ." Pl.'s Mot. Summ. J. ¶ 30.

However, Rarick was on notice from his first communication with Federated that he was not covered by the policy and that his claim would be denied. *See* Stip. Facts Ex. D. In its letter dated January 25, 2013, Federated's claim agent stated that "uninsured motorist insurance applies only to directors, officers, partners or owners of Keystone Automotive Operations, Inc. and their family members. For all other persons who qualify as 'insureds', no uninsured motorist coverage is afforded." *See id.* Federated attached the relevant portion of the policy to this letter. *See id.* In its next correspondence with Rarick, Federated attached the entire UM portion of the policy. *See* Stip. Facts Ex. F.

Furthermore, it is difficult for Rarick to argue that the defense of the valid rejection form was not properly asserted when the rejection form is (1) mentioned six times in Federated's

Answer to the Complaint and (2) listed in paragraph 74 of the "Affirmative and Other Defenses" section of the Answer. *See* Def.'s Ans. 5-8, 11, ECF No. 8. Rarick's Memorandum in Support of his Motion for Summary Judgment alleges that Rarick "assumed" Federated was referencing a different document when Federated stated that it obtained a valid "Rejection of Uninsured Motorist Coverage" in its Answer to the Complaint. *See* Pl.'s Supp. Mem. 9 n.7. But the form Federated referenced seven total times in its Answer bears a name that is nearly *identical* in every way to the title of the statutorily provided form, changing only "protection" to "coverage." *Compare* Def.'s Ans. 5-8, 11, *with* § 1731(b).

Rarick's mistaken assumption does not support an estoppel claim. He was provided notice of the rejection of his claim and provided the relevant policy portion to support the rejection of his claim. Furthermore, Rarick had clear notice from the Answer that Federated had a valid rejection form and intended to raise it as a defense in the action. At that point, Rarick could have decided to change his position and elected to settle or withdraw the claims against Federated. However, Rarick has persisted for nearly five years in his claim that the system of coverage created is unlawful, and this claim is not affected by the presence or lack thereof of a valid waiver. This lack of connection between Rarick's arguments and the presence of a valid waiver weighs heavily against estoppel. At least one court has recognized that "induce[ment] to file an unsuccessful lawsuit is not sufficient," on its own, to establish detrimental reliance. *Weintraub*, 609 F. Supp. at 275-76.

Here, Federated is not estopped from asserting the rejection as a defense. Foremost, § 1731(c.1) contains no timing requirements, and therefore, Federated has sufficiently complied with the production requirement by keeping a valid waiver and producing it during discovery. Second, a finding of estoppel can be made only where there is actual detrimental reliance. Rarick

alleges no other detrimental reliance beyond filing this suit, and such reliance does not warrant estoppel. *See id.* Rarick was on specific notice that his claim was not viable under the provided policy, and when Federated included the existence of a valid rejection form in its Answer seven times, Rarick should have been on notice of the existence of the form and made reasonable inquiries as to its existence.

Furthermore, the inclusion of the defense has not altered Federated's position on coverage, nor has it altered Rarick's argument that the two-tiered system of coverage is unlawful. *See e.g.*, *Blofsen v. Cutaiar*, 333 A.2d 841, 844 (Pa. 1975) ("There was no evidence which indicated [plaintiff] acted any differently than he would have acted had he known he was ineligible for pension benefits."). There is no allegation in Rarick's Motion for Summary Judgment or supporting memorandum that he would have acted any differently or declined to file suit had he known about the rejection form at the time of the denial of his insurance claim.[13] This Court cannot find detrimental reliance where the positions of both parties have not changed after the production of the valid rejection form.

Therefore, Federated is not estopped from asserting the valid rejection as a defense.

## IV.    CONCLUSION

Summary judgment is warranted for Federated in this action because Federated is entitled to judgment as a matter of law with regard to (1) the existence of a valid rejection of UM/UIM benefits under the MVFRL, (2) the existence of a valid coverage scheme with respect to the Keystone Policy under the MVFRL, and (3) the ability of Federated to assert the valid rejection

---

[13]    In addition, Rarick had every opportunity to settle or withdraw his claims against the insurer on either July 8, 2013, when Federated mentioned the form seven times in its Answer, or August 6, 2013, when Federated presented Rarick the waiver.  Both of those dates occurred no more than three months after the filing of the Complaint and the first of those dates marked Federated's first responsive pleading.

as a defense. Federated has produced a valid rejection of UM/UIM benefits that complies with the requirements of the MVFRL. Nothing in the MVFRL prohibits a commercial policyholder from rejecting UM/UIM benefits for some and electing it for others. Finally, Federated is not estopped from asserting the valid UM/UIM rejection form as a defense.

Therefore, this Court grants summary judgment in Federated's favor. A separate order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
Joseph F. Leeson, Jr.
United States District Judge